## J. B. CHRISMAN *v.* JAMES CURRIE ET AL.

1. TAX-TITLE. *Acquisition thereof by State, how alleged. Chancery practice.*
   Where it is necessary to allege in a bill in chancery the State's acquisition of title to a tract of land sold for taxes, it is an inapt expression to state that the land "was forfeited to the State;" but a bill is not demurrable on account of such averment.

2. SAME. *Presumptions annexed to deed. Acts 1872 and 1873 construed.*
   The act of 1872, entitled "An act to quiet tax-titles and increase the revenue of the State," and the act "supplemental to and amendatory" thereof, approved April 7, 1873, constitute parts of one common scheme, the later act repealing nothing in the former except where there is a necessary repugnance. And the *prima facie* presumptions of the validity of title annexed to the deeds made under sect. 5 of the Act of 1872 attach also to those made under the supplemental act.

3. SAME. *Bill to perfect. Sect. 578, Code 1880, construed.*
   S ‹ ‹8 of the Code of 1880, authorizing the filing of bills to perfect tax-titles applies to every variety and species of such titles.

4. SAME. *Bill for confirmation. Defence of fraud in procuring patent.*
   In a suit to confirm a tax-title, defendants opposing the relief sought cannot litigate the question whether a patent to the land issued by the United States was fraudulently obtained, and might be cancelled, with the view of showing that the land was not liable to taxation when sold for taxes.

APPEAL from the Chancery Court of Lincoln County.

Hon. H. S. VAN EATON, Chancellor.

On the 27th of December, 1880, J. B. Chrisman filed the bill in this cause seeking the confirmation of a tax-title to a certain described tract of land, and alleging substantially the following facts as entitling him to the relief: In 1857, James Currie entered the land from the United States under a law authorizing actual settlers to enter public lands at twelve and a half cents per acre ; and though Currie made the required oath as to actual settlement, he, in fact, never settled on the land or made any improvements ; but having learned soon after entering it that the land would not become valuable by the location of a railroad near it, he entirely abandoned it. The land escaped assessment and taxation for many years ; but "in 1871 it was assessed to James Currie, and he failing to pay

the taxes for said year it was forfeited to the State, as appears by the return of the sheriff of his sales made of delinquent lands for that year." And " on the nineteenth day of August, 1873, at a sale made by John H. Stewart, clerk of the Circuit Court in and for said county (where the land is located), under an act of the Legislature to quiet tax-titles and increase the revenue of the State, approved April 7, 1873," the land was bought by Mrs. A. C, Seavy, who received a deed thereto, as provided by the statute. And on the 21st of December, 1880, the complainant purchased the land from Mrs. Seavy and received a deed thereto from her. The heirs of James Currie, who were defendants to the bill, filed a demurrer thereto. The demurrer was sustained and the complainant appealed. The questions raised by the demurrer are sufficiently indicated in the opinion of the court.

*Charles Chrisman*, for the appellant.

The bill discloses that complainant purchased the lands from Mrs. Seavy, relying on a tax-title to the lands acquired by Mrs. Seavy on the fourteenth day of August, 1873, at a sale made by John H. Stewart, clerk of the Circuit Court, under an act of the Legislature to quiet tax-titles and increase the revenue of the State, approved April 5th, 1872, and the act amendatory thereto, approved April 7th, 1873. He further alleges that the lands were forfeited to the State for taxes in 1872 for the taxes of 1871, and were certified to the clerk of the Circuit Court by the auditor of public accounts. That the allegations in the bill are sufficient under sect. 578 of the Code of 1880, see *Belcher* v. *Mhoon*, 47 Miss. 49. But the law under which the land was sold makes the deed of the clerk (Exhibit A to the bill, and is to be taken as a part of this bill) *prima facie* evidence that all the prerequisites of the law of forfeiture and sale for non-payment of taxes have been complied with. See Acts 1872, p. 11.

*R. H. Thompson*, on the same side.

Under sect. 578, Code 1880, providing for the confirmation of tax-titles, the bill is required to contain only four things : —

1. That complainant claims the land under a tax-title.

2. That it was acquired at a sale for taxes before suit.

3. That the time for redemption had expired.

4. The names and places of residence of parties interested, etc.

All of these requirements are met by the allegations of the bill. By the law of 1872, p. 11, sect. 54, the clerk's deed was and is *primia facie* evidence that the State's title was perfect, and by Act of 1880, p. 331, sect. 1, the acts of the clerk are completely legalized, so as to pass to Mrs. Seavy the State's title. The State could give this if the Legislature saw proper. The deeds being a part of the bill, and being *primia facie* evidence of the sales, and of the essential recitals contained in them, the objection, if made, that the previous sale for taxes of 1871 was not adequately pleaded is without force; but the allegations of the bill are sufficient.

*Sessions & Cassedy,* for the appellees.

The bill, whether treated as a bill to confirm a tax-title, or as a bill to remove clouds, is legally insufficient, because, —

1. No acquisition of title by the State is shown. The only allegation in the bill that could be claimed as showing this is insufficient. Code 1871, sect. 1698; *Maysoll* v. *Banks,* 59 Miss. 447.

2. The act of April 5, 1872, makes no provision for a public sale at auction of the lands referred to in it. Sect. 4 of the act prescribes the form of deed to be made. Sect. 5 extends the privilege of purchase to any person the same as to the owner, and directs the clerk to execute to the "purchaser a deed conveying the State's title to the same, and such deed shall be *prima facie* evidence that all the prerequisites of the law of forfeiture and sale for the non-payment of taxes have been strictly complied with." The deed in this case from Stewart to Mrs. Seavy is not "such deed." The sale at which she purchased was not a mere private entry of land under the act of 1872, but a purchase at a public sale at

auction under the amendatory act of April, 1873, which act does not make the deed evidence of anything. Sect. 5 of the act of 1873 is not amendatory of the act of 1872, but establishes an independent system for the disposition of lands acquired under the latter act. Sect. 7 of the act of 1873 repeals all acts or parts of acts repugnant to it.

3. Sect. 578 of the Code of 1880 does not authorize the filing of a bill to confirm a title claimed to have been acquired at a sale made by the clerk under the act of 1873. *Weir* v. *Kitchens,* 52 Miss. 74.

4. The allegations of the bill, if meaning anything, lead to the legal conclusion that Currie, the patentee from the government, perpetrated a fraud upon the laws of the United States in the acquisition of title, and if these charges be true, and on demurrer they are to be so treated, no title passed from the United States, or was vested in him by the patent, and the land was not subject to taxation.

CHALMERS, J., delivered the opinion of the court.

1. To say this land "was forfeited to the State," is an inapt method of stating an acquisition of title by the State, since land is conveyed to the State with us, not by forfeiture, but by the filing of a list of lands sold to the State in the proper office, which is made the equivalent of a formal deed ; but the expression is a common one, both in popular and legal parlance, and such an averment is not demurrable.

2. The act "to quiet tax-titles and increase the revenue of the State" (Acts 1872, p. 9), and the act supplemental and amendatory thereof (Acts 1873, p. 91) constitute parts of a common scheme, and the later act repeals nothing in the former, except where it is necessarily repugnant. The *prima facie* presumptions of the validity of title annexed to the deeds made under the fifth section of the act of 1872 attach also to those made under the supplemental act.

3. Sect. 578 of the Code of 1880, authorizing the filing of bills to perfect tax-titles, applies to every variety and species of tax-titles.

4. Defendants cannot litigate in this proceeding the validity of any claim the United States government may have to cancel the patent granted by it for fraud practised in its procurement. That is a question for the government. If that patent was null they have no interest or right to be heard in this suit.

Decree sustaining demurrer reversed, demurrer overruled, and defendants given sixty days to answer.