notice of it. The allegation on this subject is that they knew that the " conveyance was made solely for the purpose and to the end that said Peter Crum was to be protected from any loss or liability he might sustain by reason of his becoming the surety of the said L. G. Crum, and for no other purpose whatever."

There is nothing in this of knowledge on their part that Peter Crum was to reconvey or hold the title for the benefit of the grantors, and, in fact, nothing inconsistent with the idea of an absolute grant. They may have known all that is averred and yet thought that the deed was without verbal conditions. An absolute conveyance was as efficacious to protect the grantee as a defeasible one, and certainly Peter Crum and his grantors had the right to bargain for an absolute conveyance in consideration of his assumption of liability on the bond, and certainly the instrument itself shows that such was the fact. * * *

OPINION.— COOPER, J., delivered the opinion of the court.

---

## D. A. OUTLAW et al. *v.* THOMAS H. MAYO.

**Abatement Act — Liquidating Levee Board — Sheriff's Sale — Commissioner's Sale.**

> Where lands were sold by the tax collector under the Abatement Act, on May 10, 1875, and the same lands wer sold to the liquidating levee board, on May 10, 1870, and conveyed by the liquidating levee commissioners to the purchaser of May 10, 1875, on February 10, 1879, *held* that such conveyances are good against a subsequent transfer at an administrator's sale.

1

Sales under the Abatement Act did not pass merely the title held by the State under a prior tax sale, but, in addition, conferred a new title by virtue of the proceedings under that act. Cochran *v.* Baker, 60 Miss. 282.

The validity of sales under the act is not dependent upon the regularity of the last assessment or of the levy for the year 1874. The act adopted the

Bill in chancery by Thomas H. Mayo against D. A. Outlaw et al. seeking to set aside a certain conveyance of lands made by Gwin and Hemingway, commissioners of the liquidating levee board and to cancel cloud upon complainant's title.

From a decree for complainant there was appeal to the Supreme Court.

The substantial averments of the bill are as follows: Complainant alleged that in the year 1869 he recovered judgment against one Joseph W. Field for $503.92, and that *nulla bona* execution was returned thereon. That subsequently Field died leaving an

assessments in the various counties and the levy of taxes as then fixed as establishing the valuation of land and the rate of taxation, and had the effect to cure all irregularities or defects in such assessment or levy arising from the nonperformance or irregular performance of any act which the Legislature might constitutionally dispense with. Cochran *v.* Baker, 60 Miss. 282.

Hence, the fact that the levy in case of the original sale was excessive, or was made at the wrong place, does not affect the title to land sold under the Abatement Act. Chambers *v.* Myrick, 61 Miss. 459.

Where land held by the State under a previous tax sale was sold for liquidating levee taxes in 1870, the latter sale was void. Ricks *v.* Baskett, 68 Miss. 250, 8 So. 514.

Lands delinquent were to be sold on the second Monday of May, and a sale after the first day, but before the second Monday of May, was void. The days intervening were intended to be days of grace to the taxpayer, and no final default could occur until the later date. Davis *v.* Schmidt, 68 Miss. 736, 10 So. 64.

By section 1 of the Act of 1888 (Laws, p. 40), deeds of conveyance from Gwin & Hemingway, commissioners in the case of Green and Gibbs, in the Chancery Court of Hinds county, are made *prima facie* evidence that the lands embraced therein were duly sold to the board of levee commissioners. As to these lands, this statute obviates the necessity of the production of the deed or list of lands originally sold by the tax collector. Patterson *v.* Durfey, 68 Miss. 779, 9 So. 354.

One claiming under such deed must point out the particular title which the State claimed, and in aid of which the presumption is invoked. He cannot, by merely averring generally the title in the State, devolve on his adversary the burden of showing the negative fact that no tax sale was ever made to the State. Bank *v.* Railway Co., 72 Miss. 447, 17 So. 7.

And the *prima facie* effect of a deed from the Auditor is overcome, where the only evidence of title in the State is a list of land sold to the State in 1875, certified by the Auditor, and it nowhere appears that the list was ever filed by the tax collector with the chancery clerk, and it is not certified by the tax collector as required by section 1698, Code 1871. Bank *v.* Railway Co., 72 Miss. 447, 17 So. 7.

insolvent estate with two minor children.   That J. H. Field, a son of decedent, was appointed administrator.   There being no personalty, administrator procured an order from court to sell certain lands located in Sunflower county to pay debts of the estate.   That said lands were purchased by complainant at administrator's sale for the sum of $1,400, and his title thereto confirmed, in May, 1879.   That said lands were sold in May, 1870, to the liquidating levee board for taxes due said board for the years 1867, 1868, and 1869.   That complainant was ignorant of such a condition until after his purchase of said lands, when one Outlaw informed him

Section 578, Code 1880 (Code 1892, § 498), authorizing the filing of bills to confirm tax titles, applies to every variety of such titles.   Chrisman v. Currie, 60 Miss. 858.

It applies to levee tax titles, a levee district being "a district" within the meaning of the first section of said act.   Belcher v. Mhoon, 47 Miss. 613; Metcalf v. Perry, 66 Miss. 68, 5 So. 232.

And the same was true under section 1753, Code 1871, whether the title was acquired by purchase at a tax collector's sale, or from the levee treasurer after the land has been struck off to him.   Beirne v. Burdette, 52 Miss. 795.

Act Miss. March 1, 1875, known as the Abatement Act, allowing delinquent owners of land sold for taxes to pay one year's taxes for 1874 as the price of relinquishment of all the State's claim on the land for past, failing in which the land was to be sold as prescribed, did not, by its mere approval, divest the title of the State or levee board; but if the owner did not pay the taxes for 1874, and the land was not sold under the act, it remained unaffected by the act, and continued to be held as before.   Paxton v. Valley Land Co., 68 Miss. 739, 10 So. 77.

While lands belonged to the board of liquidating levee commissioners, under a valid tax sale for levee taxes, they were not subject to be again sold for levee taxes, and if so resold, no title is thereby conveyed.   Mitchell v. Bond, 84 Miss. 72, 36 So. 148.

Where land was sold in 1867 to the State for taxes and again in 1870 to the liquidating levee board, and afterward under the decree of the Chancery Court of Hinds county, in Gibbs v. Green, purchased by one who procured a release of the State's title under the acts of March 4, 1884 (Laws, p. 182), and March 2, 1888 (Laws, p. 41), the validity of title so acquired is not affected by the question whether the title was in the levee board or State, since if either had title, he acquired it; and such land is thereafter subject to sale for unpaid taxes as his property.   Means v. Haley, 84 Miss. 550, 36 So. 257.

Tax sales to the liquidating levee board for delinquent liquidating taxes are not void because not made on the proper day; nor because the tax collectors had not executed their official bonds before making the sales; nor because deeds were not executed by the tax collectors, there being written evidence of the sale.   Woodruff v. State, 77 Miss. 68, 25 So. 483.

that he (Outlaw) and John and William Rose had purchased the same on May 10, 1875, at a tax sale of said levee board.

That on February 10, 1879, the said Outlaw had purchased these same lands from the levee commissioners and received a deed therefor, of which deed complainant had learned after his own title to this land had been confirmed and deed accordingly. That in February, 1880, complainant had endeavored to redeem these lands from the said Outlaw and others, but that they claimed a paramount title to said lands.

That, at the date of the several purchases for taxes, Field's children were minors, and were minors when the sale was made to Outlaw and others, wherefore defendants acquired no title as against such minors or complainant. Complainant offered to refund to defendants all taxes paid by them on the lands, and prayed that Outlaw and others be made parties defendant, and that guardians *ad litem* be appointed for certain minor children interested, and that the deed from Gwin and Hemingway as commissioners be declared void and canceled as a cloud upon complainant's title, and that his own title be established.

The answer admitted the judgment against Fields and the qualification of J. H. Fields as administrator, and the sale by him of the lands, as alleged. That the lands were sold to the levee board in May, 1870, for the taxes of 1867, 1868, and 1869, but denied that complainant had no notice of the condition of said lands at the time of his purchase thereof. Admitted the purchase by defendants of said lands on May 10, 1875, from the tax collector, and alleged recordation of such conveyance. Admitted the purchase of February 10, 1879, from S. Gwin, Auditor of Public Accounts, and W. L. Hemingway, Treasurer, respectively, of the State of Mississippi, and commissioners under a decree from the Chancery Court of Hinds county, Mississippi, duly recorded in the county of the location of the lands. Denied that complainant ever made any arrangements for the redemption of the lands. Admitted that they claimed paramount title to the land.

APPEALED from Chancery Court, LeFlore county, R. W. WILLIAMSON, Chancellor.

Reversed and remanded, February 9, 1885.

*Attorneys for appellant, H. S. Hooker and Calhoon & Green.*

*Attorneys for appellee, L. P. Yerger and W. B. Helm.*

Brief of H. S. Hooker:

This was a bill filed to set aside certain deeds held by appellants as a cloud on appellee's title. The decree attempts to declare the conveyances under which appellants claim title as illegal and void, and to establish appellee's title.

If we examine the pleadings and evidence in the cause, we can find nothing upon which the chancellor could predicate his decree.

The statute makes the deeds of appellants *prima facie* evidence of a compliance with all the requirements of the statute, and of a good title. All *vitiating matter* must be *averred* and *proven*. The tax and levee deeds are *prima facie evidence* of a *good* and *valid* title in appellants and *must stand* unless the appellee has in his pleading *averred* and by his evidence *established* the existence or nonexistence of those things which vitiate the deeds. Griffin *v.* Dogan, 48 Miss. 11; Meeks *v.* Whately, 48 Miss. 337.

He cannot, under the statute or the ordinary rules of chancery pleading, prove any vitiating matter that has not been alleged in his bill.

Upon an examination of the bill, the only vitiating matter charged is that the sales " were irregular and void," without stating in what the irregularity consisted. The only claim upon which the levee deed could be declared void is the sale for the taxes for 1867, 1868, and 1869. The taxes were all properly assessed, charged, and levied upon the lands. There is no complaint of a wrongful assessment or a wrongful levy, but the inference from the bill is that the sale for the three years' taxes which were then due was void.

That the sheriff may sell land for back taxes, see Blackwell on Tax Titles, p. 163.

But appellants had also a tax title derived from a sale of the land for taxes on the 10th of May, 1875. . (The sale was under the Abatement Act.) There is *not a single fact* averred in the bill which even tends to defeat and avoid appellants' deed. The simple and only averment of the bill is that the tax deed is irregular and void. It does not pretend to show wherein it is irregular or the existence or nonexistence of what facts render it void. We submit that there is nothing in the bill upon which the court could predicate a decree that this deed was void and a cloud on complainant's title.

The complainant's evidence, which was admitted over defendant's objection, does not sustain the decree. It was incompetent to prove the existence or nonexistence of facts which were not averred in the complainant's bill. But, even conceding the competency of the evidence, it only goes to the validity of the title acquired by appellants under their purchase on the 10th of February, 1879. It does not affect their title to the land acquired by their purchase on the 10th of May, 1875. As to the last-named but first-made purchase, there is not an iota of testimony that goes to vitiate it. Hence we insist that there is nothing in the record upon which the Chancery Court could base the decree it made.

The attitude of complainant seems to be this: He sets up that we have a deed to his land, which deed upon its face imports that we have a good title. This deed he asks the court to declare illegal and a cloud on his title, without pretending to aver or prove any facts which render the deed illegal. In other words, he wants the court to reverse the statute and all the prior decisions and hold that a tax deed, instead of being *prima facie* evidence of a title, is *prima facie* evidence of a want of title. That, instead of the presumptions existing that the law has been complied with, the presumption exists that the law has not been complied with. * * *

Brief of Calhoon & Green:

* * * The deed to levee commissioners in 1870 was in accordance with the statute, except that, instead of a $40,000 bond being given, the bond was in penalty of $25,000.

But for the announcement, as said in Dingey v. Paxton, 60 Miss.; in Vasser v. George, 47 Miss., that the failure to give the statutory bond avoided the sale, it would never have been supposed to have that effect. In Vasser v. George, the principles announced should have decided the case the other way. The provision of the Constitution of 1869, in regard to construction to be given tax titles, was not adverted to in that case and the spirit of that provision was therein denied.

Practically Dingey v. Paxton overrules Vasser v. George.

But the levee tax title sought to be canceled does not rest alone on the force of its own provisions for validity. It has passed through the Chancery Court and there, after full opportunity given to redeem, the lands were directed to be resold, and under this decree appellants bought. If the owners of the land were parties

to that suit, and it does not appear by the decree who were parties, certain it is that the decree of sale must carry the title. There can be no doubt that the taxes were a lien and, even if the sale was invalid by reason of no bond, it was proper for the Chancery Court in the Green *v.* Gibbs decree to order a sale of the lands to pay the taxes or, in other words, to enforce the lien.

Where a sale is made under the decree of the Chancery Court, it must be presumed that the court had jurisdiction of all the parties in interest. The record here does not contradict this presumption. *Non constat,* but that the owner of the land appeared in the Chancery Court and contested the title to these very lands. So far from showing that appellant had no title, the decrees offered in evidence confirm their title. Certain it is that the tax deeds and decree do not show a " *cloud,*" but a good title.

Appellants bought from *tax collector* under Abatement Act, which was recorded June, 1876; sale was made and deed dated May 10, 1875. This is a perfect title. Cochran *v.* Baker, 60 Miss. 282.

If there was any defect in it, the statute bars recovery. Acts 1875, § 13, p. 16.

This deed was offered in evidence, though there is no proper allegation in the bill assailing it.

Brief of Yerger & Helm :

\* \* \* The deeds and sales of Johnson are void, because not made on the second Monday of May, as required by law, but were made on the 10th day of May, 1870, which the court judicially knows was *not* the second Monday of May in that year. The court will not indulge in the presumption that Johnson did commence the sale on the 9th of May, for there was nothing in the record to indicate it. And if such was the case, the person holding under him ought to have offered proof on that point, because the record shows that the sale was not made on the day appointed by law.

In Mayer *v.* Peebles, 58 Miss. 628, it was contended that the court ought to presume that the sale was continued from day to day till the day of sale, but the court held that the law required the sale to be on the second Monday of May, which, in 1869, was the tenth day; therefore the sale was declared void.

The sale of Johnson was void on another ground. He sold the

land in 1870, at one time, for the taxes claimed to be due for the three years, 1867, 1868, and 1869; when the statute required that the "tax  *  *  *  shall be payable *annually,* on or before the 1st day of May, 1868 (see section 1 of Acts of 1867), and the land shall be subject to sale without further assessment, unless the tax thereon be paid on or before the first day of May of each and every year (§ 2, Id.), and the tax levied and assessed as aforesaid shall be collected in the same manner, and the land which may be sold for the payment thereof, *shall be sold on the second Monday of May in each and every year,* in the same manner — as is provided for the collection or sale of land for taxes in the Act of December 2, 1858, aforesaid, and the amendments thereto." See § 3, Id.

The second section of the Act of 1858 required the sheriff to collect the tax within the time prescribed therein, that is to say, on the 1st of April, 1859, and annually thereafter; and the sixth section provides that, should any owner or owners of any lands, or any person interested in the same, fail to pay the taxes, at the time when the same may become due, it shall be the duty of the sheriff in the county in which the land may be situated, without further notice, on the second Monday of April, in each and every year after the tax may become due, to sell the land in default, or so much thereof as may be sufficient to pay the tax required, and all cost of conveyance to the purchaser, to the highest bidder for cash.   In other words, he was bound to sell *annually* for the tax of each year, and could not sell at one time for the taxes of two or three years.

The sale of Quinn on May 10, 1875, was void, because the land was not held or claimed by the State for taxes for any year previous to 1874.   Witty *v.* Gamble, 55 Miss.      ; Mayson *v.* Banks, 50 Miss. 447; Dingy *v.* Paxton, 60 Miss. 1038; Weathersby *v.* Thoma, 57 Miss. 296; French *v.* Ladd, 57 Miss. 678.

The land was not sold for the taxes of 1874 *alone,* as was required by law, but was sold for the taxes of 1874 and 50 per cent. damages added.   Section 5 of the Act of March 1, 1875, declares that all land heretofore held or claimed for taxes, either by the State or any of the said three levee boards, are hereby declared to be liable for the taxes of 1874 *alone,* to wit: the State tax, the teachers' fund tax, and county taxes for said fiscal year of 1874, and likewise for the taxes of the three levee boards for the said

fiscal year of 1874, as changed by section 4 of this act, commencing with January 1, 1874, and ending with the 31st day of December, 1874.

If the premises be correct, it follows that the deed of Gwin & Hemingway conveyed no title.

OPINION.— CAMPBELL, C. J., delivered the opinion of the court:

There is nothing in the record to impeach the title conveyed by the deed of the tax collector in pursuance of the sale made on the 10th of May, 1875.

The deed of Johnson, tax collector, made May 10, 1870, if admitted to be void, shows the fact that the land was conveyed to the levee board. The inference is a fair one, from this deed and the subsequent sale of the land by Gwin & Hemingway, that this land was claimed by the levee board. Being claimed by this board for delinquent taxes for years prior to 1874, it was subject to the operation of the "Abatement Act," and, having been sold under it and in accordance with it, so far as appears, the purchasers at the sale acquired title. The chancellor erred in vacating the deed of May 10, 1875.

*Reversed* and remanded.